# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                                    |   |                       |
|------------------------------------|---|-----------------------|
|                                    | : |                       |
| MARK AMBROSE,                      | : |                       |
| Plaintiff,                         | : | No. 3:20-cv-723 (KAD) |
|                                    | : |                       |
| v.                                 | : |                       |
|                                    | : |                       |
| WILLIAM MULLIGAN, et al.,          | : |                       |
| Defendants.                        | : |                       |
|                                    | : |                       |

## INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Mark Ambrose ("Ambrose"), currently confined at MacDougall-Walker
Correctional Institution in Suffield, Connecticut, brings this civil rights action *pro se* pursuant to
42 U.S.C. § 1983.  Ambrose names five defendants: Warden William Mulligan, and four
members of the Utilization Review Committee ("URC") - Drs. Syed J. Naqvi[1], Monica Farinella,
Ricardo Ruiz, and Cary Freston.  Ambrose describes his claims as cruel and unusual punishment,
deliberate indifference, denial of due process, intentional and negligent infliction of emotional
distress, and negligence.  He seeks damages as well as declaratory and injunctive relief.  The
complaint was received on May 26, 2020.  Ambrose's motion to proceed *in forma pauperis* was
granted on June 19, 2020.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

---

[1] Claims are also brought against Dr. Naqvi arising out of his treatment of the Plaintiff not simply his role
as a member of the URC.

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

**Allegations**

On June 26, 2017, Ambrose fell because there was a lot of water on the floor outside the shower.  Doc. No. 1 ¶ 13.  His right pinky finger bent backward into an "L" shape.  *Id.*  Ambrose went to the medical unit where Nurse Bonetti said he might need treatment at an outside hospital and contacted Dr. Naqvi for permission to send him there.  *Id.*  Dr. Naqvi instructed the nurse to splint the finger and said Ambrose would need an x-ray which was taken on June 28, 2017.  *Id.*

On July 9, 2017, Ambrose saw Dr. Naqvi.  *Id.* ¶ 14.  The doctor prescribed anti-inflammatory medication to reduce the swelling and pain medication, which Ambrose states he never received.  *Id.*  Dr. Naqvi stated he wanted a second x-ray and said he would submit a request for Ambrose to go to UConn to have his finger repaired.  *Id.*  The second x-ray was taken

2

on July 18, 2017. *Id.*

On July 17, 2017, Ambrose submitted a request to Dr. Naqvi to go to UConn for surgery because of severe pain in his finger. *Id.* ¶ 15. Ambrose continues to experience pain in his finger. *Id.* ¶ 16. On July 24, 2017, Correctional Officer Miriam asked the medical department to treat Ambrose's hand. *Id.* ¶ 18. Nurse Kathy put Ambrose on the list to see Dr. Naqvi as soon as possible and gave him 800 mg Motrin to take for three days. *Id.* On July 27, 2017, Ambrose spoke to Warden Mulligan, who contacted the medical unit on Ambrose's behalf. *Id.* ¶ 19. Warden Mulligan told Ambrose that he would be seen in the medical unit during the week of July 31, 2017. *Id.* Ambrose describes Warden Mulligan as "helpful on [his] behalf trying to get [him] seen and attended to." *Id.*

On July 31, 2017, Ambrose's mother contacted Department of Correction Department of Health Services Director Dr. Kathleen Maurer. *Id.* ¶ 20. On August 2, 2017, Dr. Mauer sent Dr. Timothy Bombard to see Ambrose. *Id.* ¶ 21. Dr. Bombard told Ambrose that he would be seen by an orthopedic surgeon. *Id.* On August 3, 2017, Ambrose saw a hand specialist at UConn who put his hand in a soft cast. *Id.* ¶ 22.

On August 18, 2017, Ambrose returned to UConn and was seen by orthopedist Dr. Ramji. *Id.* ¶ 23. Dr. Ramji diagnosed a torn tendon and told Ambrose his finger would never be the same. *Id.* In response to Ambrose's question, Dr. Ramji opined that the result would not be the same had Ambrose been treated immediately. *Id.*

On September 26, 2017, three months after the accident, Ambrose's finger was worse and he was in constant pain. *Id.* ¶ 24. He had written to Dr. Farinella, who had contacted orthopedic surgeon Mazzocca at UConn, but received no response. *Id.* On October 17, 2017, Warden

Mulligan again intervened to have Ambrose seen in the medical unit. *Id.* ¶ 25.

On October 20, 2017, Ambrose saw Dr. Pillai. *Id.* ¶ 26. When Ambrose described his pain as 8,5 out of 10, Dr. Pillai submitted a request for Ambrose to go to UConn to see the specialist. *Id.* Prior to November 1, 2017, Dr. Maurer requested that Ambrose be seen again in response to a request from Ambrose's mother, but he was not seen. *Id.* ¶ 27.

Ambrose returned to UConn on December 22, 2017. *Id.* ¶ 28. Dr. Ramji told Ambrose that he would be called back to UConn in January for surgery on his hand with possible amputation as permanent damage had been done to his finger. *Id.* On January 29, 2018, Dr. Pillai told Ambrose there was no immediate date for his return to UConn because he had a soft tissue injury. *Id.* ¶ 29. When Ambrose complained about pain and difficulty writing, Dr. Pillai said he would contact the URC about a date. *Id.* On February 23, 2018, Dr. Pillai told Ambrose that the URC had denied the request for him to go to UConn and ordered the facility medical staff repair his hand. *Id.* ¶ 30.

On April 6, 2018, Ambrose went to UConn for a different procedure. *Id.* ¶ 31. The doctor looked at Ambrose's hand and wanted to bring him back for an MRI. *Id.* He thought he could repair the finger but wanted to consult with a colleague. *Id.* On June 13, 2018, Ambrose went to UConn for the MRI. *Id.* ¶ 32. On June 29, 2018, Ambrose had a consultation with two orthopedists. *Id.* ¶ 33. The doctors told Ambrose they could not fix his finger because the scar tissue was too extensive; they said the surgery was too dangerous and they feared future complications. *Id.*

Ambrose was not seen again in the facility medical department until January 17, 2019. *Id.* ¶ 34. He returned to UConn on March 1, 2019 and spoke to a different orthopedist. *Id.*

4

Ambrose complained of constant pain at a level of 10 out of 10, numbness, and inability to write. *Id.*

On August 2, 2019, Ambrose saw a fourth orthopedist at UConn and again requested surgery. *Id.* ¶ 36.  On February 21, 2020, Ambrose was told by a fifth orthopedist that fusion was no longer an option; there was little clinical benefit and there was risk of infection and chronic pain. *Id.* ¶ 37.  The damage is now permanent and irreparable. *Id.*

**Discussion**

Ambrose asserts federal and state law claims regarding the defendants' alleged failure to provide medical treatment.[2]  Although Ambrose references both cruel and unusual punishment and due process as his federal claims, Ambrose is a sentenced prisoner.  *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=149427 (last visited June 22, 2020).  Thus, his claims are cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment, not the Due Process Clause of the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of pretrial detainees are considered under the Fourteenth Amendment while claims of sentenced inmates are considered under the Eighth Amendment).

--------

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims.  That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants.  If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

The court, therefore, construes the claims as Eighth Amendment claims for deliberate

indifference to serious medical needs.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical

needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To

state a claim for deliberate indifference to a serious medical need, Ambrose must show both that

his need was serious, and that the defendants acted with a sufficiently culpable state of mind.

*See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97,

104 (1976)).

There are both objective and subjective components to the deliberate indifference claim.

Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138.

The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99

F.3d 550, 553 (2d Cir. 1996). This inquiry "requires the court to examine how the offending

conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the

prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A "sufficiently serious"

deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of

causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158,

162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

A medical condition may not initially be serious, but may become serious because it is

degenerative and, if left untreated or neglected for a long period of time, will "result in further

significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219

F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are

"highly relevant" to the question of whether a medical condition is sufficiently serious, including

6

"an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The defendants' actions or inactions also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. The defendants "need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 279-80. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838. Nor does a disagreement over the treatment provided show deliberate indifference. See *Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment …. [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Ambrose's injury was described as a torn tendon and a soft tissue injury. The Court has located only one case within the Second Circuit that has considered whether a torn tendon in an inmate's pinky finger is a serious medical need. *Paterson v. Goord*, No. 9:06-CV-211, 2008 WL

7

623123, at *8 (N.D.N.Y. Mar.4, 2008).  The judge in *Paterson,* observed that all four district courts in New York have specifically held, as a matter of law, that a broken finger alone is not a serious medical need, *Id.* (citing cases), and therefore held that an injury to an unbroken finger cannot be a serious medical need.  *Id.*

However, in addition to identifying his injury as a torn tendon, Ambrose alleges that he has experienced severe pain for three years and that he was seen by five orthopedists to determine whether the tendon could be repaired.  These allegations meet two of the *Chance* factors, that the injury was worthy of comment and caused debilitating pain.  The court assumes, therefore, for purposes of initial review only, that Ambrose has a serious medical need.

**Dr. Naqvi – as treatment provider**

Ambrose alleges that Dr. Naqvi rendered his initial treatment.  Immediately after the injury, Dr. Naqvi ordered a splint and x-ray rather than immediate transport to an outside hospital.  After viewing the x-ray, Dr. Naqvi prescribed anti-inflammatory and pain medication and a second x-ray after which he would submit a request for Ambrose to be seen by a specialist. Ambrose does not allege that he saw Dr. Naqvi after July 9, 2017.

The decision to prescribe anti-inflammatory medication and x-rays instead of sending Ambrose to UConn right away is a disagreement over treatment and is not cognizable under section 1983.  In addition, Ambrose's allegation that Dr. Naqvi stated that he would submit a request for treatment at UConn suggests that Dr. Naqvi did not have the authority, on his own, to order Ambrose taken to UConn for this injury. There are no allegations to the contrary.

Ambrose also alleges that he never received the anti-inflammatory and pain medications Dr. Naqvi prescribed.  He alleges no facts, however, suggesting that Dr. Naqvi himself would

have filled the prescriptions or that Dr. Naqvi was aware that the prescriptions had not been filled.  Although the allegations suggest that Dr. Naqvi did not follow up to see that his orders were carried out, this would constitute at most negligence, which is not cognizable under section 1983.  Thus, Ambrose fails to state a plausible claim for deliberate indifference to serious medical needs against Dr. Naqvi as an individual medical care provider.

**The URC Defendants**

Ambrose also names Dr. Naqvi, along with Drs. Farinella, Ruiz, and Freston, as members of the URC.  Although Ambrose was seen by specialists several times, he alleges that the URC delayed his return for surgery until the injury became permanent.  Based on the various reports of the specialists, the URC could have been aware of and disregarded a significant risk if surgery was not provided.  Thus, Ambrose has alleged sufficient facts to state a plausible deliberate indifference claim against the URC members arising out of this delay.

**Warden Mulligan**

Finally, Ambrose names Warden Mulligan as a defendant.  In his description of the parties, Ambrose states that Warden Mulligan is responsible for overseeing the facility and all inmate care.  The court therefore construes the claim against Warden Mulligan as one of supervisory liability.

To state a cognizable claim for supervisor liability, Ambrose must show that:

"(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference ... by failing to act on information indicating that
unconstitutional acts were occurring."

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,
873 (2d Cir. 1995)).  Warden Mulligan is not a doctor.  He does not provide medical care and
Ambrose has alleged no facts suggesting that he can override a URC decision.  Ambrose does
allege that he spoke to Warden Mulligan about his medical issues on two occasions and, each
time, Warden Mulligan was in fact helpful in arranging for Ambrose to be seen in the medical
unit.  Absent any suggestion that Warden Mulligan has authority to do more than arrange for a
medical visit, Ambrose fails to state a claim for supervisory liability against him.

**Orders**

The federal claims against Warden Mulligan and against Dr. Naqvi (arising out of his
medical care of the Plaintiff) are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The case
will proceed on the deliberate indifference to serious medical needs claims against URC
members Naqvi, Farinella, Ruiz, and Freston in their individual and official capacities.[3]

The court enters the following additional orders.

(1)      **The Clerk shall** verify the current work address for defendants Naqvi, Farinella,
Ruiz, and Freston with the Department of Correction Office of Legal Affairs, mail a waiver of
service of process request packet containing the Complaint and this Order to each defendant at
the address provided on or before **July 7, 2020**, and report to the court on the status of the waiver
request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request,

---

[3] Any claim for damages shall proceed against the defendants in their individual capacities only, while the
claims for injunctive or declaratory relief shall proceed against the defendants in their official capacities only.

the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal Service is directed to effect service of the Complaint and this Order on defendants Naqvi, Farinella, Ruiz, and Freston in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **July 7, 2020** and to file a return of service within thirty (30) days from the date of this order.

(3)     T**he Clerk shall** send Ambrose a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 23, 2021**. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed by **February 23, 2020**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Ambrose changes his address at any time during the litigation of this case,

11

Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Ambrose must give notice of a new address even if he is incarcerated.  Ambrose should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Ambrose has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Ambrose should also notify the defendants or the attorney for the defendants of his new address.

(9)     Ambrose shall utilize the Prisoner Efiling Program when filing documents with the court.  Ambrose is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Ambrose.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of June 2020.

/s/
Kari A. Dooley
United States District Judge